UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| PERCY T., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-CV-829-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Percy T. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED.**

## <u>BACKGROUND</u>

Plaintiff protectively filed his application for SSI on January 25, 2017, alleging disability beginning January 19, 2015 (the disability onset date), due to broken bones right hand, difficulty grasping heavy items, fractured left shoulder, major depression, anxiety, and panic attacks, lack of energy, easily stressed out, insomnia and heart murmur diagnosed in childhood. Transcript ("Tr.") 142-55, 171. Plaintiff's claim was denied initially on April 28, 2017, after which he requested an

administrative hearing. Tr. 15. On May 7, 2018, Administrative Law Judge Paul Georger (the "ALJ") presided over a hearing in Buffalo, New York. *Id*. Plaintiff appeared and testified at the hearing and was represented by Nicholas Di Virgilio, an attorney. *Id*. Jay Steinbrenner, an impartial vocational expert ("VE"), appeared and testified telephonically. *Id*.

The ALJ issued an unfavorable decision on April 1, 2018, finding that Plaintiff was not disabled. Tr. 15-25. On May 4, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's April 1, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.  The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his April 1, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since January 25, 2017, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: bipolar disorder, anxiety disorder and depressive disorder (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to occasional exposure to humidity and wetness, and occasional exposure to dust, odors fumes and pulmonary irritants. He is limited to occasional exposure to extreme cold and extreme heat. The claimant further is limited to perform simple, routine and repetitive tasks and limited to simple work-related decisions. He is limited to occasional interaction with supervisors, coworkers and the public. He further is capable of making simple, work related decisions;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on January 20,1988 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 25, 2017, the date the application was filed (20 CFR 416.920(1)).

Tr. 15-25.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on January 25, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 25.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ failed to consider the entire medical record because he made no mention of Plaintiff's history of suicide attempts, and the ALJ's RFC is not supported by substantial evidence because it is based on an incomplete mischaracterization of the record. *See* ECF No. 9-1 at 9-12. Next, Plaintiff argues that the RFC is unsupported by substantial evidence because opinion evidence from Plaintiff's mental health treatment provider, Winston Douglas, M.D. ("Dr. Douglas"), was given prior to Plaintiff's June 2018 suicide attempt, and was, therefore, stale. *See id.* at 12-15. The Court notes that Plaintiff challenges only the mental portion of the RFC finding, and therefore, the physical portion of the RFC is not an issue in this appeal. *See id.* at 8-15.

The Commissioner responds that: (1) the ALJ properly considered the severity of Plaintiff's mental impairments; and (2) the ALJ's failure to explicitly mention Plaintiff's June 2018 suicide attempt does not mean that the ALJ did not consider it, since the ALJ cited the discussed records referring to the suicide attempt. *See* ECF No. 10-1 at 18-20. Accordingly, argues the Commissioner, the ALJ's decision is supported by substantial evidence. *Id.*

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's analysis was thorough, and his mental RFC finding is supported by treating source medical opinion evidence, as well as the objective mental status evaluation findings of record and Plaintiff's ability to engage in extensive activities of daily living. Because the ALJ's mental RFC finding is based on substantial evidence, the Court finds no error.

In his first point of error, Plaintiff argues that remand is warranted because the ALJ did not explicitly discuss his June 2018 suicide attempt and mischaracterized the evidence when he indicated that Plaintiff was not suicidal. *See* ECF No. 10-1 at 8-15. For the reasons set forth below, the Court finds Plaintiff's arguments unavailing. Although an ALJ must consider all of the relevant medical and other evidence, an ALJ is not required to discuss every piece of evidence submitted. Furthermore, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Here, the ALJ considered the overall record evidence and found that Plaintiff had three separate severe mental impairments that caused functional limitations. Tr. 17-23. Furthermore, even if the ALJ did not cite or discuss Plaintiff's June 2018 suicide attempt, he specifically cited the correctional facility's records discussing Plaintiff's June 2018 suicide attempt. Tr. 22, 329, 333, 335, 344. Moreover, the ALJ did not mischaracterize the record when he noted that Plaintiff was not suicidal. Plaintiff denied suicidal ideation/intent throughout the record. Tr. 289, 338, 344, 346, 352-53, 363, 367. Plaintiff has failed to establish how explicit mention of the suicide attempt, which was not discussed by Plaintiff or his counsel during the hearing, would alter the ALJ's decision. *See Vincent K.-B. v. Saul*, No. 3:20-CV-157 (DJS), 2021 WL 535052, at *3 (N.D.N.Y.

6

Feb. 12, 2021) (in rejecting plaintiff's argument that the ALJ erred in not addressing his chronic suicidal ideation and hospitalizations, the court explained that the ALJ found depressive disorder to be a severe impairment, and plaintiff failed to explain why an explicit discussion of his suicidal ideation and hospitalization were critical to the ALJ's determination, or what tie any additional limitation should have to some additional decrease in residual functional capacity).

In addition, suicidal ideation does not prove that a claimant is disabled because deficits in mental health brought upon by situational stress are not necessarily disabling. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 83-84 (2d Cir. 2015) (finding that behaviors precipitated by situational factors rather than longitudinal manifestations of psychological disorders belied the presence of totally disabling functional limitations); *Denea v. Comm'r of Soc. Sec.*, No. 18-CV-779, 2020 WL 994672, at *6 (W.D.N.Y. Mar. 2, 2020) (Although the record showed that plaintiff handled stress poorly at times, the factors cited by plaintiff that caused him stress were largely episodic and/or situational rather than disabling); *Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability).

Here, Plaintiff's suicide attempt was prompted by an argument with his girlfriend and her parents after they kicked him out of their house while he was visiting them in Florida. Tr. 335. Plaintiff was subsequently treated at Guidance/Care Center where he reported he had attempted suicide by cutting his left forearm and wrist. Tr. 344-45. He stated that he had not been taking his medication; he denied wanting to harm himself; and he was just angry about the situation overall. Tr. 420, 423. Plaintiff's mental status examination revealed that while his insight and judgment were poor and his mood was anxious/depressed with congruent affect, his speech was normal; his thought process was logical; his associations and memory were intact; and he was oriented to

person, place, and time. Tr. 420, 422. *See Johnson v. Comm'r of Soc. Sec.*, No. 1:19-CV-0706 CJS, 2020 WL 5104550, at *5 (W.D.N.Y. Aug. 31, 2020) (Plaintiff's multiple suicidal gestures, purportedly because she was upset over her relationships with her boyfriend and with one of her sons, did not support disability claim when she immediately expressed remorse and denied suicidality, and had frequent unremarkable mental status findings). Under these circumstances, it is reasonable to conclude that Plaintiff's action was based on a situational stressor and was not disabling. Accordingly, the Court finds no error.

In his second point of error, Plaintiff argues that Plaintiff's June 2018 suicide attempt rendered Dr. Douglas' opinion stale and created a gap in the record requiring an updated medical source statement. *See* ECF No. 9-1 at 14- 15. Plaintiff's second point of error is similarly unavailing. For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. *Vazquez v. Saul*, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019) (citing *Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018)); *see also Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), aff'd 652 F. App'x 25 (2d Cir. 2016). Such is not the case here. As discussed above, Plaintiff's mental status examination findings were generally unremarkable throughout the relevant period, despite his irritability and occasional poor judgment, and do not reflect such a significant deterioration in Plaintiff's mental health so as to render Dr. Douglas' opinion stale. *See Silvestri v. Comm'r of Soc. Sec.*, No. 18-CV-357-FPG, 2020 WL 746589, at *3 (W.D.N.Y. Feb. 14, 2020) (While the record is clear that during the pendency of her claim, Plaintiff was consistently depressed and anxious and was hospitalized for 16 days

following a suspected suicide attempt, there is nothing to suggest that her condition deteriorated so precipitously as to render the state agency medical consultant's three year old opinion stale).

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's factual finding that Plaintiff retained the RFC for unskilled light work. Tr. 19-23. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996). Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

In support of the RFC finding, the ALJ cited evidence from Plaintiff's mental health treatment provider, Dr. Douglas, supporting the finding that Plaintiff could perform the basic mental requirements of unskilled work. *See* 20 C.F.R. § 416.921(b)(3)-(6) (the basic mental demands of competitive, remunerative, unskilled work include the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting). For example, on November 20, 2016, Dr. Douglas observed that Plaintiff was cooperative, and although he displayed "depersonalization" during the visit and had a flat affect, his thought process appeared

normal without dementia or overt illogical thinking; his memory was intact; and his attention was normal. Tr. 287, 307.

On the same date, Dr. Douglas diagnosed Plaintiff with major depressive disorder, recurrent, moderate; anxiety disorder; and insomnia, and opined that Plaintiff was only moderately limited in the ability to maintain attention and concentration and in the ability to function in a work setting at a consistent pace, and had no evidence of limitations in all other areas of mental functioning, *i.e.*, understanding and remembering instructions, carrying out instructions, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior and basic standards of personal hygiene and grooming. Tr. 287, 402-03. Dr. Douglas also opined that Plaintiff should avoid stressful situations. Tr. 403. The ALJ assigned Dr. Douglas' opinion "some weight," noting that his opinion was consistent with the overall medical record, as well as Dr. Douglas' own treatment records. Tr. 23.

Contrary to Plaintiff's contention (*see* ECF No. 9-1 at 12-14), moderate mental limitations, such as those provided by Dr. Douglas, are consistent with, and do not preclude, the performance of unskilled work or the RFC finding. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Matta v. Astrue*, 508 Fed. Appx. 53, 55 (2d Cir. 2013) ("[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation omitted); *see also Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, at *3 (N.D.N.Y. 2014) (holding that the ALJ adequately factored in limitations in maintaining concentration,

persistence and pace and difficulties in dealing with stress by limiting the claimant to simple unskilled work). Accordingly, Dr. Douglas' opinion supports the RFC for simple, unskilled work with occasional interactions with supervisors, co-workers and the public. Tr. 19.

Other evidence subsequent to Dr. Douglas' November 2016 opinion also supports the RFC finding. For example, on January 12, 2017, Plaintiff told Dr. Douglas that although he was having difficulty with his moods, his anxiety felt better compared to his last visit, and he had no medication side effects. Tr. 21, 289. Plaintiff had a cooperative attitude and flat affect, and no suicidal or homicidal thoughts. *Id*. His thought process appeared normal, and he denied compulsion. Tr. 291. Dr. Douglas assessed insomnia, impulse disorder, and anxiety disorder, unspecified, and prescribed Seroquel and Risperdal. *Id*.

In March 2017, Plaintiff was incarcerated at Erie County Correctional Facility. Tr. 346-53. Danielle Crowley, FMH Spec II ("Ms. Crowley"), performed a Mental Health Assessment and Admission Screening after Plaintiff requestied Trazadone. Tr. 346. Upon mental status examination, Ms. Crowley noted poor eye contact, normal motor behavior, cooperative, euthymic mood, constricted affect, appropriate thought content, no perceptual disturbance, normal speech, coherent thought process, intact memory, alert, and average insight and judgment. Tr. 346, 352. Plaintiff had no suicidal ideation and reported his future plans as "stay out of jail, pray to get a job, and keep himself busy." Tr. 346, 352. He also stated he planned to continue his mental health treatment after he was released. Tr. 352. Ms. Crowley diagnosed major depressive disorder and continued Plaintiff's current medications. Tr. 353.

The ALJ's decision reflects that he considered Plaintiff's mental health treatment during his three-month incarceration. Tr. 21. For instance, the ALJ noted medical records from Erie County Correctional Facility dated April 21, 2017 wherein a treating therapist documented "a

history of irritable mood, assaultive behaviors and impulsivity" and assessed "antisocial personality disorder." Tr, 21, 326. The ALJ noted that Plaintiff received counseling while incarcerated due to reports of "irritability and aggression when faced with adversity." Tr. 21, 326-27. The ALJ also noted that on June 5, 2017, Plaintiff told the correctional facility provider that he was compliant with his medication, and Depakote was helping with his mood instability. Tr. 21, 363. Plaintiff presented as groomed, alert, coherent, and fully oriented. He had a normal mood and affect as well as logical thought content. *Id*. Plaintiff had intact memory and average intellectual functioning, and he denied suicidal thoughts, homicidal thoughts, or current violent behaviors. Tr. 21, 364. Plaintiff also showed normal memory and intact insight and judgment. Tr. 21, 363. Plaintiff was scheduled for release on June 12, 2017, and reported he had plans to get a job, help his mother, and try to obey the law. Tr. 363.

The ALJ also discussed Plaintiff's follow-up mental health treatment following his release. Tr. 21-22. On August 1, 2017, Plaintiff was seen by a nurse practitioner at Dr. Douglas' office. Tr. 21-22, 309. The ALJ noted that Plaintiff told the nurse practitioner that he had received Depakote for mood disorder while in jail, which had been "very effective," and he wanted to continue taking it. *Id*. Plaintiff also wanted to resume taking Trazodone for insomnia. Tr. 22, 309. Plaintiff further stated that his anxiety had been "mostly well-controlled." Tr. 22, 309. Upon mental status evaluation, Plaintiff had a cooperative attitude, normal mood, normal affect and thought process, and denied compulsion. Tr. 23, 311, 312. Plaintiff's Personal Health Questionnaire results revealed moderate depression, and the nurse practitioner diagnosed anxiety disorder; major depressive disorder, recurrent, moderate; insomnia due to other mental disorder; and impulse disorder, and prescribed Depakote, Trazodone and Risperdal. Tr. 22-23, 312.

As further evidence to support the RFC, the ALJ also cited Erie County Correctional Facility records from July 2018 through December 2018, where Plaintiff was incarcerated shortly after his June 2018 suicide attempt. Tr. 22, 344-45. During intake, Plaintiff had intact insight and judgment with no evidence of psychosis, and his speech was coherent and logical. Tr. 344. Plaintiff reported current mental health medication (Depakote, Trazadone and Risperdal) and denied suicidal ideation or plans. Tr. 344.

On September 4, 2018, Plaintiff's mental status examination was unremarkable: motor behavior, speech, affect, mood and memory were normal; thought process was logical; he was alert; and he denied suicidal and homicidal ideation. Tr. 338. On October 2, 2018, Plaintiff continued to deny any suicidal or homicidal ideation and said that he was "okay." Tr. 22, 367. Plaintiff was compliant with his medication, and a mental status examination was within normal limits. Tr. 22, 368. Plaintiff had normal motor behavior, speech, affect, mood and memory; intact insight and judgment; goal-directed thought content; and logical/coherent thought process. *Id*. The ALJ noted that Plaintiff reported that medications helped with his irritability but did not alleviate "his quickness to frustration." Tr. 22, 367. On October 11, Plaintiff's judgment, insight, memory, mood, and affect were all normal. Tr. 22, 343. As the ALJ noted, there is no evidence of outpatient mental health treatment following Plaintiff's December 2018 release from jail. Tr. 22. As the ALJ further noted, Plaintiff testified at his January 15, 2019 hearing that he was taking his medications and planned to resume treatment, and the medical record documents that his symptoms were adequately controlled with medication. Tr. 22, 47-49.

The ALJ also considered Plaintiff's February 2017 Function Report, wherein Plaintiff indicated that he could prepare simple meals, pay bills, care for his personal needs, handle a savings account, watch television, play cards with his mother, and take public transportation, and

13

reasonably concluded that the report supported the RFC for unskilled work. Tr. 19, 20, 22-23, 178, 180, 182. Plaintiff also testified at his January 2019 hearing that he was able to care for his personal needs, prepare simple meals, and help with household chores, although his aunt, with whom he lived, preferred to do these chores herself. Tr. 19, 23, 52-53. Plaintiff also enjoyed drawing and going to the movies. Tr. 23, 54. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes and activities of daily to formulate the RFC assessment and rejected the argument that a medical opinion was required); *see also Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016) (ALJ looks to all of the relevant medical and other evidence including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC). As the ALJ found, while Plaintiff had impairments that are reasonably expected to produce the symptoms he alleges, his complaints suggest a greater severity of symptoms that can be shown by the objective evidence and the record as a whole. Tr. 19, 23. Based on the foregoing, the Court finds that the overall evidence of record supports the ALJ's mental RFC finding.

Plaintiff also argues that remand is warranted because the ALJ did not consider whether Plaintiff's history of medication noncompliance was a symptom of his bipolar disorder. *See* ECF No. 9-1 at 11-12.  This argument likewise fails. Nothing in the record establishes that Plaintiff had a history of medication noncompliance. Rather, the ALJ cited multiple examples in the record showing that Plaintiff was generally compliant with his medication, and his mental status examination findings reflected his compliance. Tr. 21, 22, 281, 284, 287, 289, 291, 309, 311, 312. In fact, the record reflects that Plaintiff proactively sought needed medications while incarcerated. *See, e.g.*, Tr. 309, 346. In this case, there is no evidence suggesting that Plaintiff had a mental inability to stay on his medication, or that his failure to take his medication was related to any

mental impairment. *See Scott v. Comm'r of Soc. Sec.*, No. 19-CV-6890 (BMC), 2021 WL 848798, at *1 (E.D.N.Y. 2021) (the record did not support plaintiff's speculative argument that his medication noncompliance was due to his mental impairment); *Larson v. Comm'r of Soc. Sec.*, No. 19-CV-0116-MWP, 2020 WL 5018331, at *5 (W.D.N.Y. Aug. 25, 2020) (finding that plaintiff did not identify any medical evidence in the record linking her well-documented noncompliance issues specifically to her schizoid personality disorder diagnosis). Thus, the ALJ reasonably found that, with the proper treatment, Plaintiff could perform work on a regular and continuing basis. *See Matta*, 508 F. App'x at 57 (substantial evidence supported ALJ's finding that plaintiff's bipolar disorder, which may be vulnerable to mood swings, deteriorated only after he stopped taking his medication and that his condition improved with treatment).

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, and his findings are supported by substantial evidence in the record as a whole. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE